# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

LAUREN MOODY,

                Plaintiff,

    v.

OSCAR INSURANCE COMPANY,          Case No. 4:25-cv-2577

                Defendant,

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

Comes now Plaintiff Lauren Moody, individually and on behalf of all others similarly situated, complaining of Defendant Oscar Insurance Company ("Oscar") and for such respectfully shows the Court as follows:

## INTRODUCTION

1.    All Oscar non-ERISA medical insurance policies issued or renewed in Texas on or after January 1, 2022, as conformed to Texas law, require Oscar to pay 100% of the cost of breast-related "diagnostic imaging," as that term is defined in Tex. Ins. Code § 1356.001(1-a). In violation of Tex. Ins. Code § 1356.005(1-a) and in breach of the Policies, Oscar has been requiring the insureds[1] who make up the

---

[1] The relevant policy provisions refer to the persons covered by the policy as Members, and they do so without restriction by gender. This is likely because men, as well as

Class to pay deductibles and coinsurance for diagnostic breast imaging. This class action seeks to recover all amounts Oscar required Plaintiff Moody and the Class to pay for diagnostic breast imaging.

2.     Oscar's violation of Texas law and breach of its policies don't just harm its insureds economically. It also endangers their lives. For insureds who have dense breast tissue, who have detected a lump or had their doctor detect one, who have had an abnormality show up on a screening mammogram, or who have a prior history of breast cancer, diagnostic breast imaging is a crucial tool to increase early detection and successful treatment of breast cancer.

3.     Critically, the requirement to pay all or part of the cost of diagnostic breast imaging, often hundreds of dollars, as a deductible and/or coinsurance may prevent or discourage many insureds from obtaining this potentially life-saving testing as recommended by their doctors. The Legislature passed Tex. Ins. Code § 1356.005(a-1), which requires insurers to pay 100% of the cost of diagnostic breast imaging, specifically to prevent insured people from endangering their lives because they can't afford to pay a large part of the cost of such imaging.

---

women, can suffer breast cancer. *See* https://www.cdc.gov/breast-cancer/about/men.html#.

## **PARTIES, JURISDICTION AND VENUE**

4.    Plaintiff Lauren Moody is a natural person who, at all times relevant to this action, resided in Houston, Texas.

5.    Defendant Oscar Insurance Company ("Oscar") is incorporated and headquartered in New York.

6.    This Court has personal jurisdiction over Oscar because it routinely issues medical insurance policies and pays medical insurance claims in the State of Texas and in this District.

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  Plaintiff and the members of the Class are citizens of Texas and multiple other states.  Oscar is a citizen of New York.  The amount in controversy exceeds $5,000,000, exclusive of interest and costs.[2]

---

[2] According to Oscar's website it provides medical insurance to approximately 1.7 million people in 18 states.   Those 18 states have an approximate combined population of 194.75 million, 30 million of whom, or 15.4%, live in Texas. Applying that percentage to 1.7 million customers gives an estimate of 261,000 Oscar Texas insureds. 50.3% of the Texas population is estimated to be women, giving an estimated 131,283 female Oscar insureds in Texas. 37.5% of the women in Texas are estimated to be 35-64, giving an estimate of 49,231 female Oscar insureds in the right age range in Texas. Estimates are that 50% of all women have dense breast tissue necessitating diagnostic breast imaging, giving an estimated class size of 24,616. Assuming the estimated average deductible and coinsurance paid by them is $100 and that they each had diagnostic breast imaging all four years from 2022-2025, the estimated damages are $9,846,400. As set forth below, the Class's causes of action offer the possibility of recovering three times those economic damages, plus attorneys' fees, giving maximum recoverable damages of approximately $30 million.

8.     Venue in this District in proper pursuant to 28 U.S.C. § 1391(b)(1) and/or (2) because Oscar is subject to personal jurisdiction in this District with respect to this action and a substantial part of the wrongful acts or omissions of Oscar took place in the District.

## **TEXAS LAW**

9.     Texas first enacted Chapter 1356 of the Texas Insurance Code in 1987. At that time, it required all medical insurance policies in Texas to provide coverage for annual screening mammograms for women 35 years of age and older and that the coverage be no less favorable than that for other types of x-rays. Tex. Ins. Code, art. 3.70-2(H) (Vernon 1988). In 2010, the federal government enacted the Affordable Care Act ("ACA") which requires all U.S. medical insurance policies to provide coverage for annual screening mammograms at no out-of-pocket cost (no deductible, no co-pay, and no coinsurance). *See* 42 U.S.C. § 300gg-13(a)(1), (4) & (5); 2009 U.S. Preventive Services Task Force Recommendation for Screening of Breast Cancer, Annals of Internal Medicine, Vol. 64 No.4, Feb. 16, 2016. This meant all Texas medical insurance policies had to cover annual screening mammograms for women 35 years of age or older at no out-of-pocket cost.

10.     In 2021, Texas amended Chapter 1356 to provide that, effective January 1, 2022, all medical insurance policies issued or renewed in Texas must provide coverage for diagnostic breast imaging *no less favorable* than the coverage for

screening mammograms (for which there can be no cost sharing per the ACA). Tex. Ins. Code § 1356.005(a-1).  So, from January 1, 2022, forward, all Texas policies must provide coverage for diagnostic breast imaging at no out-of-pocket cost.

11.    The statute provides that:

 ""Diagnostic Imaging" means an imaging examination using mammography, ultrasound imaging, or magnetic resonance imaging that is designed to evaluate:

(A) a subjective or objective abnormality detected by a physician or patient in a breast;

(B) an abnormality seen by a physician on a screening mammogram;

(C) an abnormality previously identified by a physician as probably benign in a breast for which follow-up imaging is recommended by a physician; or

(D) an individual with a personal history of breast cancer or dense breast tissue."

Tex. Ins. Code § 1356.001(1-a).

## OSCAR'S MEDICAL INSURANCE POLICIES IN TEXAS

12.    Upon information and belief, all the non-ERISA medical insurance policies issued or renewed in Texas by Oscar on or after January 1, 2022, and related schedules of benefits ("the Policies") contain materially the same relevant provisions as the schedule of benefits and the policy Oscar issued to Moody. The schedule of

benefits and the relevant portions of the policy Oscar issued to Moody are attached hereto respectively as Exhibits A and B.

13.    The Policies provide in the Schedules of Benefits under "Medical Professional Service" that the "Participating Provider Member Responsibility for Cost Sharing" is "$0 copayment not subject to deductible" for "Preventive Care Visits" and "25% coinsurance after deductible" for "X-rays and Diagnostic Imaging."

14.    The Policies provide in "Covered Services" under "Diagnostic Services" as follows:

> If ordered in advance by a Network Provider, We will cover …
>     diagnostic
> radiology and imaging ….
>
> We will cover diagnostic tests, materials, and screening services including:
> - Diagnostic radiology and imaging
> - Mammograms

15.    In "Covered Services," under "Mammograms and Other Breast Imaging Services," the Policies provide as follows:

> We cover screening mammograms, including Breast Tomosynthesis (3D or digital mammography), for Members with no signs or symptoms of breast cancer for the purpose of detecting the presence of breast cancer. See Preventive Care Services section of the Agreement for covered screening intervals.

In addition to screening mammograms, the Plan provides benefits for the following breast imaging services, *subject to the Cost Share* set forth on Your Schedule of Benefits [25% coinsurance after deductible]:

- Diagnostic mammograms (i.e., mammograms performed to evaluate an abnormality in the breasts).
- Breast ultrasounds
- Breast magnetic resonance imaging (MRI).

16.    In "Covered Services," under "Preventive Care Services," the Policies provide as follows:

This Plan provides benefits for the following:

…

- Items and services that have a rating of "A" or "B" in the current recommendations of the United States Preventive Services Task Force (USPSTF);
- Services provided for in the Health Resources and Services Administration (HRSA)-supported women's preventive services guidelines;

….

When performed by In-Network Providers, preventive services *are not subject to Cost Share (Copayments, Deductibles or Coinsurance)*.

…

Items and services covered under the preventive benefit include the following:

…

F. **<u>Breast Cancer Screening</u>**. Clinical breast exams and screening mammography for the detection of breast cancer are covered under the preventive care benefit. Screening mammograms, including Breast Tomosynthesis (3D or digital mammography), are covered as described below.

- One screening mammogram per Benefit Period for Members 35 years of age or older.
- Screening mammograms at intervals considered to be Medically Necessary for Members of any age who are at increased risk for breast cancer. No more than one screening mammogram per Benefit Period will be covered under the preventive care benefit. More frequent screenings for members at increased risk will be subject to Cost Sharing.

17.    In "Covered Services," under "Breast Cancer Screening," the Policies provide as follows:

> Benefits are available for diagnostic imaging and screening mammograms by low-dose mammography, including but not limited to digital mammography and breast tomosynthesis (3D mammography), for the presence of breast cancer. Screening mammograms are available to Members 35 years of age and older, as shown on Your Schedule of Benefits. Age requirements do not apply to diagnostic imaging; they are available when Medically Necessary to Members of any age.

> For the purposes of this provision, "diagnostic imaging" means imaging examination using mammography, ultrasound imaging, or magnetic resonance imaging used to evaluate an abnormality detected by a patient or to evaluate a patient with dense breast tissue.

> Benefits will not be available for more than one routine mammography screening each Calendar Year.

18.    In the "General Provisions" section of the Policies, under "Conformity with Law," they provide, "Any term of this Policy which is in conflict with Texas law or with any applicable federal law that imposes additional requirements from

what is required under State law will be amended to conform with the minimum requirements of such law."

19.    On their faces, the Policies comply with Tex. Ins. Code § 1356.005(a) and the ACA because they provide coverage for screening mammograms for female insureds 35 years of age and older at no cost to those insureds. They exceed the coverage required by Tex. Ins. Code § 1356.005(a-1) in two respects because they provide coverage for screening mammograms for all insureds regardless of sex or gender, and for diagnostic imaging for insureds of all ages for whom the imaging is medically necessary.[3]    They fail to comply with Tex. Ins. Code § 1356.005(a-1) because the requirement for Members to pay part of the costs of diagnostic imaging is less favorable than the coverage for screening mammograms (paid 100% by Oscar with no cost sharing by the Members).

## OSCAR'S UNDERPAYMENT OF DIAGNOSTIC IMAGING CLAIMS

20.    Since January 1, 2022, Oscar has failed to pay 100% of the Allowed Amounts for diagnostic breast imaging as required by the Policies amended to conform to Tex. Ins. Code § 1356.005(a-1). Instead, it has required its insureds to pay 25% coinsurance after deductible, meaning that the insured pays the full amount

---

[3] All diagnostic imaging, as that term is defined in Tex. Ins. Code § 1356.001(a-1), is Medically Necessary under the Policies.

until their deductible is met (which can be hundreds or thousands of dollars), and

25% of the cost thereafter (which likewise can be hundreds or thousands of dollars)

## OSCAR'S UNDERPAYMENT OF MOODY'S CLAIM

21.    On May 10, 2023, Moody underwent diagnostic breast imaging, an

ultrasound, at Memorial MRI and Diagnosis LLC ("Memorial"). Her doctor had

ordered the ultrasound to evaluate an abnormality in her breast which her doctor had

previously detected. Memorial purported to charge $578.00 for the ultrasound. In an

Explanation of Benefits ("EOB") dated June 11, 2023, Oscar allowed Memorial's

claim in the amount of $161.22 (the "Allowed Amount") and required Moody to pay

that entire amount towards her deductible. The EOB is attached hereto as Exhibit C.

22.    In accordance with the "Complaints and Appeals" section of the

Policies, Moody timely (within 180 days of the date of the EOB) submitted an appeal

of the underpayment of her claim to Oscar by letter dated August 10, 2023. A copy

of the appeal (minus the enclosures) is attached hereto as Exhibit D. In the appeal,

Moody explained that her Policy had been amended to conform to Tex. Ins. Code §

1356.005(a-1) and that the Policy, as amended, required Oscar to pay 100% of the

cost of her breast ultrasound. She thus demanded that Oscar pay $161.22.

23.    By letter dated September 8, 2023, a copy of which is attached hereto

as Exhibit E, Oscar denied Moody's appeal. It did so based upon the face of her

policy and schedule of benefits which provided that the member's responsibility for cost sharing on X-rays and diagnostic imaging is 25% coinsurance after deductible. It stated, "[i]n your state, Texas, diagnostic mammograms are subject to cost share." The denial did not address Moody's contention that her Policy had been amended to conform to Tex. Ins. Code § 1356.005(a-1) and that the Policy, as amended, required Oscar to pay 100% of the cost of her breast ultrasound. Consequently, Oscar did not make a good faith investigation of Moody's claim or have a reasonable basis for underpaying her claim and denying her appeal.

## BASIS FOR CERTIFYING THIS CASE AS A CLASS ACTION

24.    The members of the following defined Class are ascertainable, and the Class meets the requirements for certification set forth in Fed. R. Civ. P 23(a) and (b)(3):

> All people covered by an Oscar medical insurance policy issued or renewed in Texas on or after January 1, 2022, and not governed by ERISA, who had an in-network claim for diagnostic breast imaging that Oscar covered but did not cover 100% of the amount it allowed for the claim—the Allowed Amount.

> Excluded from the Class are all employees of Oscar and all judges who participate in adjudicating the case and their immediate family members.

25.    <u>Ascertainability</u>. It is administratively feasible to identify the members of the Class from Oscar's electronic records. Oscar paid Class members' claims for diagnostic breast imaging based upon CPT codes used by the medical providers

identifying the claims as claims for diagnostic breast imaging. Oscar can identify the Class members by searching its claims database for in-network claims made using those codes during the relevant time period which it covered but covered less than the full Allowed Amount. Oscar will have in its databases the names, addresses, telephone numbers and, in most cases, the email addresses of the Class members necessary to give them notice.

26.     <u>Rule 23(a)(1)-Numerosity.</u> The Class is so numerous that joinder of all members is impracticable. For the reasons set forth above in footnote 1, the Class likely includes thousands of women and certainly more than 40.

27.     <u>Rule 23(a)(2)-Commonality</u>. There are many questions of law or fact common to the members of the Class, including but not limited to:

a.     Did the Class members' Policies, as amended by Tex. Ins. Code § 1356.005(a-1,) require Oscar to pay 100% of the Allowed Amounts of their diagnostic breast imaging claims?

b.     Did Oscar breach Class members' Policies by failing to pay 100% of the Allowed Amounts of their diagnostic breast imaging claims?

c.     Did Class members suffer damages proximately caused by Oscar's breach of their Policies in the amounts Oscar required them to pay towards the Allowed Amounts of their diagnostic breast imaging claims?

d.     Is the Class entitled to recover the attorneys' fees and expenses it reasonably incurs in connection with its breach of policy cause of action pursuant to Tex. Civ. Prac. & Rem. Code Chapter 38?

e.  Did Oscar violate Tex. Ins. Code § 542.058(a) by failing to pay 100% of the Allowed Amounts of Class members' diagnostic breast imaging claims for more than 60 days?

f.  Pursuant to Tex. Ins. Code § 542.060(a) and (b), is Oscar liable to pay Class members 18% interest on the unpaid portions of the Allowed Amounts of their diagnostic breast imaging claims, plus reasonable attorneys' fees?

g.  Did Oscar engage in the following unfair settlement practices designated by Tex. Ins. Code § 541.060(a)(2) & (3) as unfair or deceptive acts or practices in the business of insurance with respect to Class members' diagnostic breast imaging claims: (i) failing to attempt in good faith to effectuate a prompt, fair, or equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear, and (ii) failing to promptly provide a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim?

h.  Pursuant to Tex. Ins. Code § 541.152(a)(1) & (2), may Class members recover as actual damages for Oscar's violation of Tex. Ins. Code § 541.060(a)(2) & (3) the unpaid portions of the Allowed Amounts of their diagnostic breast imaging claims, plus court costs and reasonable and necessary attorneys' fees and an order enjoining Oscar from not paying 100% of the Allowed Amounts of their future diagnostic breast imaging claims?

i.  Did Oscar "knowingly," as that term is defined in Tex. Ins. Code § 541.002(1), engage in the unfair settlement practices prohibited by Tex. Ins. Code § 541.060(a)(2) & (3),?

j.  If Oscar is found to have acted "knowingly," pursuant to Tex. Ins. Code § 541.152(b), what additional amount of damages should be awarded to Class members, not to exceed three times the amount of actual damages?

28.  Rule 23(a)(3)-Typicality. Moody's claims are typical of the claims of the Class because they arise out of the same pattern of conduct by Oscar and under the same legal theories. No unique defenses apply to Moody.

29.    Rule 23(a)(4)-Adequacy. Moody will adequately represent the Class because she is ready, willing, and able to represent the Class and she has no conflicts of interest with the Class. Indeed, Moody is uniquely qualified to represent the Class because she is a licensed Florida attorney who discovered Oscar's violation of Texas law and breach of its Policies. Moody's counsel will also adequately represent the Class because they have long experience with insurance coverage and class action litigation, and they have the resources necessary to prosecute this action.

30.    Rule 23(b)(3)-Predominance. Questions of law or fact common to Class members predominate over any question affecting only individual members. Resolution of the common issues listed above will entirely resolve Oscar's liability to all Class members and the measure of the damages Oscar must pay. Only the amount of damages each Class member will recover must be calculated individually, and that can be accomplished on an automated, ministerial basis using Oscar's electronic data.

31.    Rule 23(b)(3)-Superiority. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Class members are unaware of the existence of their claims and thus would never know to file individual claims. Even if Class members discovered their claims, they still would not bring them, because the claims are too small to economically justify suing a large corporation like Oscar. Even if Class members would bring individual suits, it would

be a waste of the judicial system's time and resources to litigate over and over the same legal issues which underpin these claims.

32.    Class members' interest in individually controlling the prosecution of separate actions is minimal or non-existent because of the small sizes of the claims. There is no litigation concerning the controversy already brought by Class members. It is desirable to concentrate the litigation of the claims in this Court because the Class will consist overwhelmingly of Texas residents and the claims arise exclusively under Texas law and insurance policies issued in Texas. The are no likely difficulties in managing this class action. As previously explained, Class members can easily be identified and their damages calculated using Oscar's electronic data.

## FIRST CAUSE OF ACTION
## BREACH OF THE POLICIES

33.    Paragraphs 1-32 above are incorporated herein as if fully set forth here verbatim.

33.    The Policies required Oscar to pay 100% of the Allowed Amounts of Class members' claims for diagnostic breast imaging. Oscar breached the Policies by requiring Class members to pay part or all of their claims as deductibles and/or coinsurance. Oscar's breach proximately caused economic damages to Class members in the amounts Class members were required to pay for their diagnostic breast imaging.

34.     Pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(b), Moody and the Class are entitled to recover their reasonable attorneys' fees incurred in this action. Moody and the Class are represented by the undersigned attorneys, they presented their claims to Oscar by a demand letter and statutory notice dated April 21, 2025, and more than 30 days has passed since that presentation of the claims without the just amount owed being paid by Oscar. A copy of demand letter/statutory notice is attached hereto as Exhibit F.

<b><u>SECOND CAUSE OF ACTION</u></b><br><b><u>VIOLATION OF TEXAS INSURANCE CODE CHAPTER 542</u></b>

35.     All the paragraphs preceding and following this cause of action are incorporated herein as if fully set forth here verbatim.

36.     Oscar violated Tex. Ins. Code § 542.058(a) by failing to pay in full the Allowed Amounts of the diagnostic breast imaging claims of Moody and the other Class members for more than 60 days after receiving the claims from their medical providers. Whenever an insurer is found to have breached its policy by nonpayment or underpayment of a claim, it has violated Tex. Ins. Code § 542.058(a).

37.     Pursuant to Tex. Ins. Code § 542.060(a) & (b), Oscar is liable to Moody and the Class for 18% interest on the amounts not paid for them by Oscar, plus their reasonable and necessary attorneys' fees incurred in connection with their claims, which attorneys' fees shall be taxed as part of the costs in the case.

**THIRD CAUSE OF ACTION**
**VIOLATION OF TEXAS INSURANCE CODE CHAPTER 541**

38.    All the paragraphs preceding and following this cause of action are incorporated herein as if fully set forth here verbatim.

39.    Oscar violated Tex. Ins. Code § 541.060(a)(2)(a) by failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim with respect to which its liability had become reasonably clear. Tex. Ins. Code § 1356.005(a-1) had undeniably modified the Policies to require Oscar to pay 100% of the Allowed Amounts of diagnostic breast imaging claims, making its liability to so pay these claims reasonably clear. Yet, Oscar had not modified the language of its Policies or its computer program which produced the EOBs to reflect the change in the law effective January 1, 2022.[4] Instead, Oscar left its Policies and computer program unmodified so that the computer program handled Moody's and the Class's claims based on the faces of the Policies which no longer conformed to Texas law.

40.    Oscar violated Tex. Ins. Code § 541.060(a)(3) by failing to promptly provide Moody and the Class with reasonable explanations of the basis in the Policies, in relation to the facts or applicable law, for its partial denial of their claims. As previously noted, the EOBs constituted Oscar's determinations of Moody's and

---

[4] The EOBs constituted Oscar's determinations of Moody's and the Class's claims.

the Class's claims. The EOBs do not explain the basis in the Policies for applying deductibles and/or coinsurance to the diagnostic breast imaging claims.

41.     Pursuant to Tex. Ins. Code § 541.151(1), Moody and the Class are authorized to bring a private cause of action for Oscar's violations of Tex. Ins. Code § 541.060(a). Pursuant to Tex. Ins. Code § 541.152(a), Moody and the Class are entitled to recover as actual damages the portions of the Allowed Amounts of their diagnostic breast imaging claims Oscar required them to pay, plus court costs and reasonable and necessary attorneys' fees, plus an order enjoining Oscar to pay 100% the Allowed Amounts of their future diagnostic breast imaging claims.

42.     Oscar committed its violations of Tex. Ins. Code § 541.060(a) "knowingly" as that term is defined in Tex. Ins. Code § 541.002(1); that is, Oscar committed them with actual awareness of their falsity, unfairness, or deceptiveness. Upon information and belief, Oscar has a regulatory compliance department that monitors changes in the insurance laws in all the states in which it issues policies. Also, upon information and belief, Oscar's regulatory compliance department learned of the September 2021 amendment to Chapter 1356 of the Texas Insurance Code that added Section 1356.005(a-1) and understood that it required payment of 100% of the Allowed Amounts of diagnostic breast imaging claims. Despite this, Oscar failed to change the language of its Policies and the computer program which determines

claims knowing this would result in underpayment of diagnostic breast imaging claims.

43.    Pursuant to Tex. Ins. Code § 541.152(b), because Oscar violated the Chapter knowingly, Moody and the Class may recover up three times their actual damages.

## JURY DEMAND

44.    Plaintiffs demand a jury trial of all issues so triable.

## REQUEST FOR RELIEF

Moody and the Class request the Court to grant them the following relief:

1.    An order certifying the Class, appointing Moody as the Class Representative, and appointing the counsel listed below as Class Counsel;

2.    A judgment awarding Moody and the Class as actual damages the portions of the Allowed Amounts of their diagnostic breast imaging claims that Oscar required them to pay;

3.    A judgment awarding Moody and the Class 18% interest on their actual damages;

4.    A judgment awarding Moody and the Class additional damages up to three times their actual damages and the 18% interest;

5.    A judgment awarding Moody and the Class their court costs and reasonable attorneys' fees and expenses;

6.     A judgment enjoining Oscar from failing to pay Moody and the Class 100% of the Allowed Amounts of their future diagnostic breast imaging claims;

7.     A judgment awarding Moody and the Class prejudgment and post-judgment interest at the maximum rates permissible at law or in equity; and

8.     A judgment awarding Moody and the Class all such other and further relief, general or special, legal or equitable, to which they may be justly entitled.

DATED: June 4, 2025.                 /s/*Roger L. Mandel*
                                     **JEEVES MANDEL LAW GROUP, P.C.**
                                     Roger L. Mandel
                                     *(application for renewal of admission forthcoming)*
                                     TBN: 12891750
                                     2833 Crockett St
                                     Suite 135
                                     Fort Worth, TX 76107
                                     Telephone: 214-253-8300
                                     rmandel@jeevesmandellawgroup.com


                                     **JEEVES LAW GROUP, P.A.**
                                     Scott R. Jeeves, FBN: 0905630
                                     *(pro hac vice application forthcoming)*
                                     2100 1st Avenue South, Suite 2
                                     St. Petersburg, Florida 33712
                                     Telephone: (727) 894-2929
                                     sjeeves@jeeveslawgroup.com
                                     khill@jeeveslawgroup.com

**CRAIG E. ROTHBURD, P.A.**
Craig E. Rothburd, FBN: 0049182
*(pro hac vice application forthcoming)*
320 W. Kennedy Blvd., #700
Tampa, Florida 33606
Telephone: (813) 251-8800
Fax: (813) 251-5042
craig@rothburdpa.com
maria@rothburdpa.com


**MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW L.L.P.**
Britney Anne Heath McDonald
Tex. Bar. No. 24083158
Fed. I.D. No. 2621983
britney@marcwhitehead.com
Marc S. Whitehead
Tex. Bar No. 00785238
Fed. I.D. No. 15465
marc@marcwhitehead.com
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940


Gregory F. Coleman*
Adam A. Edwards*
William A. Ladnier*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
gcoleman@milberg.com
aedwards@milberg.com
wladnier@milberg.com

\* Applications for admission forthcoming