United States District Court
Southern District of Texas

**ENTERED**

February 09, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LAUREN MOODY,                        §
                                     §
              Plaintiff,             §
                                     §
v.                                   §    CIVIL ACTION NO. H-25-2577
                                     §
OSCAR INSURANCE COMPANY,             §
                                     §
              Defendant.             §

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Lauren Mood ("Moody" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action against defendant, Oscar Insurance Company ("Oscar" or "Defendant"), asserting causes of action for breach of non-ERISA medical insurance policies issued or renewed in Texas on or after January 1, 2022 (Count I), violation of Texas Insurance Code § 542.058(a) for non-payment or under payment of a claim (Count II), and violation of Texas Insurance Code § 541.060(a)(2)(a) for failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim with respect to which its liability had become reasonably clear (Count III).[1]  Pending before the court is Defendant Oscar Insurance Company's Motion to Dismiss Complaint which has been converted to a Motion for Summary Judgment ("Oscar's MSJ") (Docket

---

[1]Plaintiff's Original Class Action Complaint, Docket Entry No. 1 ("Plaintiffs' Complaint"), pp. 15-19.  All page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

Entry No. 17) with respect to Counts I and II of Plaintiff's Complaint, and carried with respect to Count III.[2]  Also pending are Plaintiff Lauren Moody's Supplemental Brief in Support of Her Response to Defendant Oscar Insurance Company's Motion for Summary Judgment ("Moody's First Supplemental Brief") (Docket Entry No. 25), Defendant's Supplemental Brief in Support of Motion to Dismiss Converted to a Motion for Summary Judgment ("Oscar's First Supplemental Brief") (Docket Entry No. 26), Plaintiff Lauren Moody's Response, and Brief in Support, to Defendant's Supplemental Brief in Support of Motion to Dismiss Converted to a Motion for Summary Judgment ("Moody's Second Supplemental Brief") (Docket Entry No. 32), and Supplemental Brief in Support of Defendant Oscar Insurance Company's Motion for Summary Judgment ("Oscar's Second Supplemental Brief") (Docket Entry No. 33).  For the reasons stated below, Oscar's MSJ on Counts I and II of Plaintiff's Complaint will be granted, Defendant's Motion to Dismiss Count III of Plaintiff's Complaint will be granted, and this action will be dismissed.

## I. <u>Background</u>

Moody initiated this action on June 4, 2025, by filing Plaintiff's Class Action Complaint (Docket Entry No. 1).  On September 2, 2025, Oscar filed its Motion to Dismiss for failure to

---

[2]See Memorandum Opinion and Order, Docket Entry No. 24, p. 2 (converting Defendant's Motion to Dismiss Counts I and II of Plaintiff's Complaint to a Motion for Summary Judgment).

state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) (Docket Entry No. 17). On October 10, 2025, the court entered a Memorandum Opinion and Order that converted Oscar's Motion to Dismiss Counts I and II of Plaintiff's Complaint to a motion for summary judgment because those causes of action raise a single issue of statutory interpretation, which is a question of law for the court to decide, and because briefing submitted by both parties referred to matters outside of the pleadings with respect to that issue.[3] The court allowed the parties time to submit additional briefing, and carried Oscar's Motion to Dismiss Count III of Plaintiff's Complaint until it ruled on the MSJ.[4]

## II.  **Undisputed Facts**

Oscar provides non-ERISA health insurance to individuals in Texas and elsewhere.[5] At all relevant times, Moody was insured by the Oscar Gold Classic Standard (Choice) Policy, which referred to policyholders as "Members."[6] Oscar Members receive both a Schedule

---

[3]Memorandum Opinion and Order, Docket Entry No. 24, pp. 7-13.

[4]Id. at 18-19.

[5]Plaintiff's Complaint, Docket Entry No. 1, pp. 1 ¶ 1, and 3 ¶ 7 n. 2.

[6]Id. at 1 n. 1 and 5-6 ¶ 12.  See also Schedule of Benefits ("SOB"), Exhibit A to Plaintiffs' Complaint, Docket Entry No. 1-2, and Oscar Insurance Company Individual EPO Plan Effective January
(continued...)

of Benefits ("SOB") and Evidence of Coverage ("EOC") for each policy year.[7] Oscar's "SOB outlines the fees associated with each type of covered health care service, including the relevant deductible, co-pay, coinsurance, and out-of-pocket maximum amounts, along with those services provided at no cost to the member."[8] The SOB for Moody's 2023 Policy listed her annual deductible as $2,000.00, and it listed "$0 copayment not subject to deductible" for "Preventive Care Visits" and "25% coinsurance after deductible" for "X-rays and Diagnostic Imaging."[9]

Oscar's "EOC details the specific coverage and benefits available to the policyholder."[10] The EOC for the 2023 plan year

---

[6](...continued)
1, 2023 Policy ("Policy"), Exhibit B to Plaintiff's Complaint, Docket Entry No. 1-3; Defendant's First Supplemental Brief, Docket Entry No. 26, p. 6 (citing Declaration of Laura Doser-Neeley in Support of Defendant's Motion to Dismiss Converted to a Motion for Summary Judgment ("Doser-Neeley Declaration"), Docket Entry No. 28, p. 2 ¶ 2 ("Plaintiff Lauren R. Moody received healthcare coverage from Oscar from April 2023 until November 2024 under an Oscar Gold Classic Standard (choice) on-exchange plan.").

[7]Oscar's First Supplemental Brief, Docket Entry No. 26, p. 6 (citing Doser-Neeley Declaration, Docket Entry No. 28, p. 3 ¶ 6).

[8]Id. (citing Doser-Neeley Declaration, Docket Entry No. 28, p. 2 ¶ 4). See also Gold Classic Standard (Choice) On-Ex Schedule of Benefits 2023, Docket Entry No. 28-1, and Gold Classic Standard (Choice) On-Ex Schedule of Benefits 2024, Docket Entry No. 28-2.

[9]Plaintiff's Complaint, Docket Entry No. 1, p. 6 ¶ 13. See also Gold Classic Standard (Choice) Schedule of Benefits 2023, Docket Entry No. 28-1, p. 2.

[10]Oscar's First Supplemental Brief, Docket Entry No. 26, p. 6 (citing Doser-Neeley Declaration, Docket Entry No. 28, pp. 2-3
(continued...)

explained that Moody's Policy provided coverage without cost share for one screening mammogram per benefit period for members 35 years of age and older, and for members of any age if medically necessary.[11]  The EOC for the 2023 plan year also explained that Moody's Policy provided coverage for diagnostic imaging "subject to the cost share set forth on [her] Schedule of Benefits," _i.e._, $2,000.00 annual deductible and 25% coinsurance after the deductible is satisfied.[12]  The EOCs for Moody's Policy include a provision that amends the Policy to conform to the minimum requirements of applicable law.[13]

In May of 2023 Moody received diagnostic breast imagining at Memorial MRI and Diagnostic LLC ("Memorial") for a previously detected abnormality in her breast.[14]  Although Memorial charged $ 578.00 for the imaging, in an explanation of benefits ("EOB") letter dated June 11, 2023, Oscar allowed Memorial's claim in the

---

[10](...continued)
¶ 5).  See also EOC 2023, Docket Entry No. 28-3, and EOC  2024, Docket Entry No. 28-4.

[11]Doser-Neeley Declaration, Docket Entry No. 28, p. 2 ¶ 4.  See also Oscar's First Supplemental Brief, Docket Entry No. 26, p. 7 (citing EOC 2023, Docket Entry No. 28-3, p. 84).

[12]Oscar's First Supplemental Brief, Docket Entry No. 26, p. 7 (citing EOC 2023, Docket Entry No. 28-3, pp. 76-77, 88-89).

[13]Plaintiff's Complaint, Docket Entry No. 1, pp. 8-9 ¶ 18.  See also Oscar's First Supplemental Brief, Docket Entry No. 26, p. 7 (citing EOC 2023, Docket Entry No. 28-3, p. 145).  See also EOC 2024, Docket Entry No. 28-4, p. 149.

[14]Plaintiff's Complaint, Docket Entry No. 1, p. 10 ¶ 21.  See also Oscar's First Supplemental Brief, Docket Entry No. 26, p. 7.

amount of $161.22 ("allowed amount"), but required Moody to pay that amount towards her annual deductible of $2,000.00.[15]

By letter dated August 10, 2023, Moody appealed Oscar's EOB arguing that her Policy had been amended to conform to Texas Insurance Code § 1356.005(a-1) and that the Policy, as amended, required Oscar to pay 100% of the cost of her breast ultrasound.[16]

By letter dated September 8, 2023, Oscar denied Moody's appeal stating in pertinent part, "[i]n your state, Texas, diagnostic mammograms are subject to cost share."[17]

### III.  Oscar Is Entitled to Summary Judgment on Counts I and II

For Count I of Plaintiff's Complaint Moody alleges that

> [a]ll Oscar non-ERISA medical insurance policies issued or renewed in Texas on or after January 1, 2022, as conformed to Texas law, require Oscar to pay 100% of the cost of breast-related "diagnostic imaging," as that term is defined in Tex. Ins. Code § 1356.001(1-a)[sic].  In violation of Tex. Ins. Code § 1356.005(1-a) [sic] and in breach of the Policies, Oscar has been requiring the insureds who make up the Class to pay deductibles and

---

[15]Plaintiff's Complaint, Docket Entry No. 1, p. 10 ¶ 21. See also June 11, 2023, EOB for Claim Z31MWXNZ, Exhibit C to Plaintiff's Complaint, Docket Entry No. 1-4, p. 1; Defendant's First Supplemental Brief, Docket Entry No. 26, pp. 7-8.

[16]Plaintiff's Complaint, Docket Entry No. 1, p. 10 ¶ 22. See also August 10, 2023, Appeal of Claim Z31MWXNZ, Exhibit D to Plaintiff's Complaint, Docket Entry No. 1-5; Defendant's First Supplemental Brief, Docket Entry No. 26, p. 8.

[17]Plaintiff's Complaint, Docket Entry No. 1, pp. 10-11 ¶ 23 (quoting September 8, 2023 Letter Denial of Appeal, Exhibit E to Plaintiff's Complaint, Docket Entry No. 1-6, p. 2); Defendant's First Supplemental Brief, Docket Entry No. 26, p. 8.

coinsurance for diagnostic breast imaging. This class
action seeks to recover all amounts Oscar required
Plaintiff Moody and the Class to pay for diagnostic
breast imaging.[18]

Moody alleges that her Oscar policies "fail to comply with Texas

Insurance Code § 1356.005(a-1) because the requirement for Members

to pay part of the costs of diagnostic imaging is less favorable

than the coverage for screening mammograms (paid 100% by Oscar with

no cost sharing by the Members)."[19]

Oscar argues that Moody's allegations

fail[] as a matter of law because [Moody] admits that
Oscar did exactly what the law requires. Section
1356.005 dictates that Oscar "must" impose the same
deductible on diagnostic breast imaging as it does on
other radiological examinations. Oscar did exactly that.
That is following the law, not violating it. Indeed, if
Oscar had done as [Moody] asks — disregarding the
deductible rather than applying the same deductible as
the law requires — <u>that</u> would have been a violation.[20]

Oscar argues that Moody's interpretation of § 1356.005 is refuted

by the plain terms of the statute itself, its legislative history,

and rules of statutory construction.[21]   Moody responds that her

interpretation of § 1356.005 is reasonable, while Oscar's

interpretation is not reasonable because her interpretation

harmonizes § 1356.005 in its entirety, while Oscar's interpretation

---

[18]Plaintiff's Complaint, Docket Entry No. 1, pp. 1-2 ¶ 1.

[19]<u>Id.</u> at 9 ¶ 19.

[20]Oscar's MSJ, Docket Entry No. 17, p. 6 (emphasis in
original).

[21]<u>Id.</u> at 11-14.

does not.[22]  Oscar replies that

> the plain and clear language of [§] 1356.005, which
> controls above all else, purposefully distinguishes
> between "coverage for" diagnostic imaging and "dollar
> limits, deductibles, and coinsurance for such procedures.
> . .
>
>                          . . .
>
> [T]he plain and clear language of [§] 1356.005 supports
> [its] interpretation that [§ 1356.005] mandates 'coverage
> for' diagnostic imaging that is no less favorable than
> coverage for screening mammograms, but subject to the
> same cost sharing applicable to other radiological
> examinations.[23]

The arguments that both parties make with respect to the breach of contract claim alleged in Count I of Moody's Complaint, raise a single issue of statutory interpretation, i.e., whether Tex. Ins. Code § 1356.005 requires Oscar to pay 100% of the cost for diagnostic breast imaging.[24]

In Count II of Plaintiff's Complaint Moody alleges that

> 36.  Oscar violated Tex. Ins. Code § 542.058(a) by
>      failing to pay in full the Allowed Amounts of the
>      diagnostic breast imaging claims of Moody and the

---

[22]Plaintiff Lauren Moody's Response, and Brief in Support, to Defendant Oscar Insurance Company's Motion to Dismiss Complaint ("Plaintiff's Response"), Docket Entry No. 22, pp. 10-18.  See also Moody's First Supplemental Brief, Docket Entry No. 25, pp. 3-7; Moody's Second Supplemental Brief, Docket Entry No. 32, pp. 3-5.

[23]Defendant Oscar Insurance Company's Reply in Support of its Motion to Dismiss Complaint ("Defendant's Reply"), Docket Entry No. 23, p. 2.  See also Oscar's First Supplemental Brief, Docket Entry No. 26, pp. 8-13; Oscar's Second Supplemental Brief, Docket Entry No. 33, pp. 5-11.

[24]See Plaintiff's Response, Docket Entry No. 22, p. 9 (stating that Counts I and I present a single question of law).

other Class members for more than 60 days after
receiving the claims from their medical providers.

. . .

37. Pursuant to Tex. Ins. Code § 542.060(a) & (b),
Oscar is liable to Moody and the Class for 18%
interest on the amounts not paid for them by Oscar,
plus their reasonable and necessary attorneys' fees
incurred in connection with their claims, which
attorneys' fees shall be taxed as part of the costs
of the case.[25]

Oscar argues that Moody's assertion of this cause of action fails
because "Oscar had no obligation to pay the $161.22 sum," and
because "[t]here can be no wrongful late payment when no payment is
owed in the first instance."[26]  Moody responds that "the Policy as
conformed to Tex. Ins. Code § 1356.005(a-1) unambiguously required
it to pay 100% of [her] claim for diagnostic imaging and it paid
none of her claim because it applied the deductible."[27]  The
parties' arguments regarding Oscar's Motion for Summary Judgment on
the claim alleged in Count II of Plaintiff's Complaint raise the
same single issue of statutory interpretation raised by Moody's
breach contract claim alleged in Count I, _i.e._, whether Tex. Ins.
Code § 1356.005 requires Oscar to pay 100% of the cost of
diagnostic breast imaging.

---

[25]Plaintiff's Complaint, Docket Entry No. 1, p. 16 ¶¶ 36-37.

[26]Oscar's MSJ, Docket Entry No. 17, p. 15.  <u>See also</u>
Defendant's Reply, Docket Entry No. 23, pp. 11-13.

[27]Plaintiff's Response, Docket Entry No. 22, pp. 23-24.  <u>See
also</u> Moody's First Supplemental Brief, Docket Entry No. 25, pp. 3-
7; Moody's Second Supplemental Brief, Docket Entry No. 32, pp. 3-5.

## A.    Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment. Fed. R. Civ. P. 56. Factual disputes are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). "[T]he party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). If the moving party meets this burden, the nonmovant must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, or other admissible evidence that facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-2554). "For any matter on which the non-movant would bear the burden of proof at trial . . . the movant may merely point to the absence of

-10-

evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." Transamerica Insurance Co. v. Avenell, 66 F.3d 715, 718-19 (5th Cir. 1995) (per curiam) (citing Celotex, 106 S. Ct. at 2552-2553).  To prevent summary judgment, "the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986) (citation omitted) (emphasis in the original). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

**B.   Texas Law of Statutory Interpretation**

Issues of statutory interpretation are questions of law for the court to decide.  See In the Interest of J.S., 670 S.W.3d 591, 596 (Tex. 2023)(citing Aleman v. Texas Medical Board, 573 S.W.3d 796, 802 (Tex. 2019)).  See also Dresser v. Meba Medical & Benefits Plan, 628 F.3d 705, 708 (5th Cir. 2010)(per curiam) ("A district court's interpretation of a statute . . . is a question of law.").

"When interpreting a Texas statute, [federal courts] use the same methods of statutory interpretation used by the Texas Supreme Court." Camacho v. Ford Motor Co., 993 F.3d 308, 311 (5th Cir. 2021). "Under Texas law, the court's 'fundamental goal when reading statutes "is to ascertain and give effect to the Legislature's intent."'" CANarchy Craft Brewery Collective, L.L.C. v. Texas Alcoholic Beverage Commission, 37 F.4th 1069, 1074 (5th Cir. 2022) (quoting Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Commission, 518 S.W.3d 318, 325 (Tex. 2017) (quoting Texas Mutual Insurance Co. v. Ruttiger, 381 S.W.3d 430, 452 (Tex. 2012))).

Texas courts look for legislative "intent first and foremost in the plain language of the . . . statutory provision." Bexar Appraisal District v. Johnson, 691 S.W.3d 844, 847 (Tex. 2024) (quoting Odyssey 2020 Academy, Inc. v. Galveston Appraisal District, 624 S.W.3d 535, 540 (Tex. 2021)). Texas courts "read statutes as a whole so as to render no part inconsistent, superfluous, or devoid of meaning." Levinson Alcoser Associates, L.P. v. El Pistolón II, Ltd., 513 S.W.3d 487, 493 (Tex. 2017). See also Tex. Gov't Code § 311.021(2). "Statutory terms usually bear their common, ordinary meaning." Johnson, 691 S.W.3d at 847 (quoting Silguero v. CSL Plasma, Inc., 579 S.W.3d 53, 59 (Tex. 2019)). "If the statute's plain language is unambiguous, [courts] interpret its plain meaning, presuming that the Legislature

-12-

intended for each of the statute's words to have a purpose and that the Legislature purposefully omitted words it did not include." Id. "Where text is clear, text is determinative of [legislative] intent." Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009). Only if the text is ambiguous should courts consider rules of construction or other interpretive aids. Id. (citing In re Estate of Nash, 220 S.W.3d 914, 917 (Tex. 2007) ("If a statute is clear and unambiguous, [courts] apply its words according to their common meaning without resort to rules of construction or extrinsic aids.")). "A statute is ambiguous if it is susceptible of more than one accepted meaning." United Services Automobile Association v. Perry, 102 F.3d 144, 146 (5th Cir. 1996) (per curiam). The Court must "enforce the law as written" and "should always refrain from rewriting text that lawmakers chose." Entergy, 282 S.W.3d at 443. See also Lippincott v. Whisenhunt, 462 S.W.3d 507, 508 (Tex. 2015) ("A court may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, it must apply the statute as written.").

## C.  Application of the Law to the Undisputed Facts

Moody argues that Texas Insurance Code § 1356.005 unambiguously requires Oscar to pay 100% of the cost of breast-related "diagnostic imaging," as that term is defined in Tex. Ins. Code § 1356.001(a-1), while Oscar argues that § 1356.005

unambiguously requires it to apply the same cost sharing to diagnostic breast imaging as it applies to other radiological examinations. Alternatively, the parties argue that § 1356.005 is ambiguous and that their competing interpretations are more reasonable than that of their opponent. For the reasons stated below the court concludes that Tex. Ins. Code § 1356.005 is unambiguous and does not require Oscar to pay the full cost of Moody's diagnostic breast imaging.

When Texas enacted the initial version of what is now Chapter 1356 of the Texas Insurance Code, it required all medical insurance policies in Texas to provide coverage for annual screening mammograms for women 35 years of age and older and that the coverage for screening mammograms be no less favorable than that for other radiological examinations and subject to the same dollar limits, deductibles, and coinsurance factors. See Tex. Ins. Code art. 3.70-2(H) (Vernon 1989).[28]

In 2010 Congress enacted the Patient Protection and Affordable Care Act ("ACA"), which requires all United States medical insurance policies to provide coverage for annual screening mammograms at no out-of-pocket cost to insureds (i.e., no deductible, no co-pay, and no co-insurance). In pertinent part the ACA states that

---

[28]Exhibit A to Plaintiff Lauren Moody's Response, and Brief in Support, to Defendant Oscar Insurance Company's Motion to Dismiss Complaint, Docket Entry No. 22-1, p. 5.

[a] group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for –

(1)   evidence-based items or services that have in effect a rating of "A" or "B" in the current recommendations of the United States Preventive Services Task Force;

. . .

(4)   with respect to women, such additional preventive care and screenings not described in paragraph (1) as provided for in comprehensive guidelines supported by the Health Resources and Services Administration ["HRSA"] for purposes of this paragraph;

(5)   for the purposes of this chapter, and for the purposes of any other provision of law, the current recommendations of the United States Preventive Service Task Force regarding breast cancer screening, mammography, and prevention shall be considered the most current other than those issued in or around November 2009.

Nothing in this subsection shall be construed to prohibit a plan or issuer from providing coverage for services in addition to those recommended by United States Preventive Services Task Force or to deny coverage for services that are not recommended by such Task Force.

42 U.S.C. § 300gg-13(a)(1), (4) & (5). In 2023 when Moody received the imaging at issue in this action, the HRSA guidelines referenced in 42 U.S.C. § 300gg(a) recommended that breast cancer screening for average-risk women initiate no earlier than age 40 and no later than age 50, occur at least biennially and as frequent as annually, and continue through at least age 74.[29]

---

[29]See Health Resources & Services Administration, Women's (continued...)

In 2021 Texas added subsection (a-1) to § 1356.005. That subsection provides that, effective January 1, 2022, all medical insurance policies issued or renewed in Texas must provide coverage for diagnostic breast imaging no less favorable than coverage for a screening mammogram. Thus, since 2021 § 1356.005 has stated that

> (a)    A health benefit plan that provides coverage to a female who is 35 years of age or older must include coverage for an annual screening by all forms of low-dose mammography for the presence of occult breast cancer.
>
> (a-1)  A health benefit plan that provides coverage for a screening mammogram must provide coverage for diagnostic imaging that is no less favorable than the coverage for a screening mammogram.
>
> (b)    Coverage required by this section:
>
>> (1)    may not be less favorable than coverage for other radiological examinations under the plan; and
>>
>> (2)    must be subject to the same dollar limits, deductible, and coinsurance factors as coverage for other radiological examinations under the plan.

Tex. Ins. Code § 1356.005.

---

[29] (...continued)
Preventive Services Guidelines, www.hrsa.gov/womens-guidelines-2019 (last viewed February 4, 2026). A Notice published in the Federal Register on December 30, 2024, announced updated guidelines that included the following language: "Women may require additional imaging to complete the screening process or to address findings on the initial screening mammography. If additional imaging (e.g. [magnetic resonance imaging] MRI, ultrasound, mammography) and pathology exams are indicated, those services are also recommended to complete the screening process for malignancies." 89 F.R. 106523, 2024 WL 5238385 (Dec. 30, 2024).

"Diagnostic imaging" means:

[A]n imaging examination using mammography, ultrasound imaging, or magnetic resonance imaging that is designed to evaluate:

> (A)   a subjective or objective abnormality detected by a physician or patient in a breast;
>
> (B)   an abnormality seen by a physician on a screening mammogram;
>
> (C)   an abnormality previously identified by a physician as probably benign in a breast for which follow-up imaging is recommended by a physician; or
>
> (D)   an individual with a personal history of breast cancer or dense breast tissue.

Tex. Ins. Code § 1356.001(1-a).

Because § 1356.005(a-1) states that "[a] health benefit plan that provides coverage for a screening mammogram must provide coverage for diagnostic imaging that is no less favorable than the coverage for a screening mammogram," and because in compliance with the ACA, her Oscar Policy provided screening mammograms at no out-of-pocket cost to members, Moody argues that § 1356.005(a-1) requires Oscar to pay 100% of the cost for the diagnostic breast imaging she received in May of 2023.[30]  Moody's argument is based on a misreading that the term "coverage" used throughout § 1356.005 includes cost sharing, and a misreading of the term "other

---

[30] See Plaintiff's Response, Docket Entry No. 22, p. 9 (stating that Counts I and I present a single question of law). See also Moody's First Supplemental Brief, Docket Entry No. 25, pp. 3-7; Moody's Second Supplemental Brief, Docket Entry No. 32, pp. 3-5.

radiological examinations under the plan" used in §§ 1356.005(b)(1) and (b)(2) that means "screening mammograms."

Pursuant to § 1356.005(b)(1) coverage for both screening mammograms required by § 1356.005(a) and for diagnostic imaging addressed in § 1356.005(a-1) "may not be less favorable than coverage for other radiological examinations under the plan;" and pursuant to § 1356.005(b)(2) that coverage "must be subject to the same dollar limits, deductible, and coinsurance factors as coverage for other radiological examinations under the plan." Use of the words "subject to" in § 1356.005(b)(2) unambiguously shows that the legislature differentiated "coverage" from cost sharing. Moody, however, conflates "coverage" and cost sharing by arguing that her Oscar Policy, as written, violated Texas Insurance Code § 1356.005(a-1) "because the requirement for Members to pay part of the costs of diagnostic imaging is less favorable than the coverage for screening mammograms (paid 100% by Oscar with no cost sharing by the Members)."[31] Moody also conflates the term "screening mammogram" used in § 1356.005(a) and (a-1) with the term "other radiological examinations under the plan" used in § 1356.005(b)(1) and (b)(2) by arguing that "a [s]creening [m]ammogram is the '[o]ther [r]adiological [e]xamination' that [p]rovides the [c]ost

---

[31]Plaintiff's Complaint, Docket Entry No. 1, p. 9 ¶ 19. <u>See also</u> Moody's First Supplemental Brief, Docket Entry No. 25, pp. 3-5.

[s]haring that [m]ust [a]pply to [d]iagnostic [i]maging."[32] Acceptance of Moody's arguments would render superfluous § 1356.005(b)(2)'s requirement that the "coverage" for screening mammograms and diagnostic imaging required by § 1356.005(a) and (a-1) "must be subject to the same dollar limits, deductibles, and coinsurance factor as coverage for other radiological examinations under the plan." See Levinson Alcoser, 513 F.3d at 493 ("[Texas courts] read statutes as a whole so as to render no part inconsistent, superfluous, or devoid of meaning.").

The plain language of § 1356.005(b)(2) of the Texas Insurance Code unambiguously differentiates "coverage" from cost sharing by stating that the "coverage required by this section . . . must be subject to the same dollar limits, deductible, and coinsurance factors as coverage for other radiological examinations under the plan." In her Complaint Moody admits that other radiological examinations covered by her Oscar Policy were subject to the $2,000.00 annual deductible and 25% coinsurance.[33] This admission implicitly — if not directly — acknowledges that the term "other radiological examinations" used in both her Policy and § 1356.005(b) means radiological examinations other an screening

---

[32]Moody's First Supplemental Brief, Docket Entry No. 25, p. 5.

[33]Plaintiff's Complaint, Docket Entry No. 1, p. 6 ¶ 13. See also Gold Classic Standard (Choice) On-Ex Schedule of Benefits 2023, Docket Entry No. 28-1, p. 2.

mammograms.  The court concludes therefore, that in 2023 when Moody received the diagnostic imaging at issue, neither her Policy nor § 1356.005 of the Texas Insurance Code required Oscar to pay 100% of the cost for Moody's diagnostic breast imaging.

The court's conclusion that in 2023 § 1356.005 did not require Oscar to pay 100% of the cost for Moody's diagnostic imaging is supported by that section's legislative history.  In 2021 Senator Alvarado introduced Texas Senate Bill 1065, which amended § 1356.005 by adding subsection (a-1).  The statement of intent for that bill said that it sought to provide "favorable cost-sharing for certain diagnostic examinations;"[34] not that it sought to eliminate cost sharing entirely.  If the Texas Legislature intended to eliminate cost sharing for diagnostic imaging, it could have eliminated subsection (b)(2), or expressly prohibited cost-sharing for diagnostic imaging.  But the Texas Legislature failed to take either of those actions.  Moreover, in February of 2025, Senator Alvarado introduced Texas Senate Bill 1747, which sought to amend § 1356.005 by removing subsection (b)(2) and by adding subsection (a-2) to read "[a] health benefit plan may not impose a cost-sharing requirement on coverage for a screening mammogram,

---

[34]Exhibit 1 to Oscar's MSJ, Docket Entry No. 17-2, p. 2.  <u>See also</u> 2021 Tex. Sess. Law Serv. Ch. 867 (S.B. 1065) (Vernon's).

diagnostic imaging, or supplemental breast examination."[35]  Senate Bill 1747 died in committee.  If, as Moody argues, § 1356.005 prohibits deductibles and coinsurance for diagnostic imaging, Senator Alvarado would have had no reason to introduce Senate Bill 1747.

Moody's first cause of action for breach of contract is based on the argument that her Oscar Policy, as written, violated Texas Insurance Code § 1356.005(a-1) "because the requirement for Members to pay part of the costs of diagnostic imaging is less favorable than the coverage for screening mammograms (paid 100% by Oscar with no cost sharing by the Members)."[36]  But § 1356.005 does not prohibit cost sharing for diagnostic imaging or for screening mammograms.  To the contrary, § 1356.005(b)(2) states that "coverage required by this section," i.e., for coverage for both screening mammograms addressed in subsection (a) and diagnostic imaging addressed in subsection (a-1), "must be subject to the same dollar limits, deductibles, and coinsurance factors as coverage for other radiological examinations."  The Policy provision pursuant to which screening mammograms are provided to Oscar policy members at no out-of-pocket cost is not based on § 1356.005 or any other

[35]Exhibit 2 to Oscar's MSJ, Docket Entry No. 17-3, p. 2.  See also Texas S.B. 1747, 89th Leg. (Alvarado, 2025), available at https://legiscan.com/TX/bill/SB1747/2025 (last visited February 4, 2026).

[36]Plaintiff's Complaint, Docket Entry No. 1, p. 9 ¶ 19.

section of the Texas Insurance Code but, instead, on the ACA, _i.e._, federal law.  Moody's failure to show that Texas Insurance Code § 1356.005 prohibits deductibles or coinsurance for diagnostic imaging is fatal to her breach of contract cause of action.  The court concludes, therefore, that Oscar is entitled to summary judgment on Moody's breach of contract cause of action.

Count II of Plaintiff's Complaint asserts a cause of action for failure to promptly pay amounts due in violation of Texas Insurance Code § 542.058(a) and seeks damages under Texas Insurance Code § 542.060(a)&(b).[37]  This cause of action fails for the same reason as Moody's first cause of action for breach of contract. Because Moody does not dispute that when she received the diagnostic imaging for which she was charged $161.22 she had not satisfied her annual deductible, Oscar had no obligation to pay the $161.22 that Plaintiff alleges she was wrongly charged.  Because Oscar had no obligation to pay the $161.22 that Moody argues she was owed under her Policy, Moody cannot prevail on a cause of action for late payment.  See Barbara Technologies Corp. v. State Farm Lloyds, 589 S.W.3d 806, 813 (Tex. 2019), superseded by statute on other grounds as stated in Rodriguez v. Safeco Insurance Co. of Indiana, 684 S.W.3d 789, 794 (Tex. 2024) ("To prevail under a claim for TPPCA damages under [§] 542.060, the insured must establish:

---

[37]_Id._ at 16 ¶¶ 36-37.

(1) the insurer's liability under the insurance policy, and (2) that the insurer failed to comply with one or more of the statutory requirements for processing or paying the claim."). The court concludes, therefore, that Oscar is entitled to summary judgment on Moody's cause of action for failure to promptly pay amounts due in violation of the Texas Insurance Code § 542.058(a) and § 542.060(a)&(b).

## IV. <u>Oscar is Entitled to Dismissal of Count III</u>

Count III of Plaintiff's Complaint, which alleges that "Oscar violated Texas Insurance Code § 541.060(a)(2)(a) by failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim with respect to which its liability had become reasonably clear,"[38] fails for the same reason as her first and second causes of action fail. Moody alleges that Oscar violated § 541.060 by failing to pay the claim when its liability was "reasonably clear," <u>i.e.</u>, because Oscar failed to recognize that § 1356.005 modified her Policy to require Oscar to pay for diagnostic imaging without a deductible.[39] These allegations fail because, for the reasons stated in the preceding section of this Memorandum Opinion and Order, Oscar did not violate § 1356.005 by requiring Moody to pay a deductible for diagnostic imaging,

---

[38]Plaintiff's Complaint, Docket Entry No. 1, p. 17 ¶ 39.

[39]<u>Id.</u>

liability under her Policy did not exist and, therefore, could not
have been "reasonably clear."    See USAA Texas Lloyds Co. v.
Menchaca, 545 S.W.3d 479, 500 (Tex. 2018) ("An insured cannot
recover any damages based on an insurer's statutory violation
unless the insured establishes a right to receive benefits under
the Policy or an injury independent of a right to benefits.").

Moody also alleges that Oscar violated § 541.060 by failing to
explain the basis for its decision requiring her to pay $161.22 for
diagnostic imaging that she received in May of 2023.[40]   This
allegation fails because Oscar's September 8, 2023, letter
notifying Moody that her appeal had been denied explained that
"[i]n your state, Texas, diagnostic mammograms are subject to cost
share," that her Policy obligated her to pay the full allowed
amount for diagnostic imaging until her annual deductible amount of
$2,000.00 had been met, and that she had not satisfied that
deductible amount at the time of her claim.[41]  The court concludes,
therefore, that Oscar is entitled to dismissal of Moody's third
cause of action for failure to attempt in good faith to effectuate
a prompt, fair and equitable settlement of a claim with respect to
which its liability had become reasonably clear in violation of
Texas Insurance Code § 541.060(a)(2)(a).

---

[40]Id. at 17-18 ¶ 40.

[41]Exhibit E to Plaintiff's Complaint, Docket Entry No. 1-6,
p. 2.

## V.  **Conclusions and Order**

For the reasons stated above in § III, the court concludes that Oscar is entitled to summary judgment on Counts I and II of Plaintiff's Complaint.  For the reasons stated above in § IV, the court concludes that Oscar is entitled to dismissal of Count III of Plaintiff's Complaint.  Defendant's Motion to Dismiss, which has been converted to a motion for summary judgment with respect to Counts I and II, and which remains a motion to dismiss with respect to Count III, Docket Entry No. 17, is **GRANTED**.

SIGNED at Houston, Texas, this 9th day of February, 2026.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE